**Master Plan Document.MMEWBP.04162007.019**

### 3.07    Covered Employer Termination of Participation.

A Covered Employer may terminate participation in the Plan by providing written notice to the Third Party Administrator under 3.05. Upon the expiration of thirty (30) days of the Third Party Administrator's receipt of such notice, the Covered Employer's withdrawal shall be effective. Upon notice of termination by the Covered Employer, the Trustee shall transfer the fixed Life Benefit of the Participants of the Covered Employer to a trust under Code § 419(e), or make some other distribution as authorized by laws and regulations applicable to Code § 419A(f)(6) plans. Any residual cash or assets associated with such Insurance shall become a Plan Asset available for use by the Trustee, at the direction of the Committee for the Benefit of all Plan Participants and Beneficiaries to defray any of the costs of Plan administration.

### ARTICLE IV

### PARTICIPATION BY ELIGIBLE EMPLOYEES

### 4.01    Eligibility Requirements.

Employees who are eligible to participate in the Plan shall be identified by the Covered Employer in the Adoption Agreement. However, notwithstanding any provision in the Adoption Agreement, in no event shall any person be deemed an Eligible Employee where:

      i.     the individual is under twenty-five (25) years of age;

      ii.    the individual is deemed uninsurable and/or is determined by the Third Party Administrator, in its sole and absolute discretion, not to meet the criteria for assignment to any Rating Group identified in Exhibit "B" to the Plan; or

      iii.   the individual does business as an individual, sole proprietorship or "dba" and not through a bona fide corporate entity or partnership recognized under applicable state laws.

### 4.02    Issuance of Insurance Policy and Rating Group Assignment.

      a.    **Issuance of Insurance Policy and Rating Group Assignment.** The identity of the Eligible Employees named in the Adoption Agreement of the Covered Employer shall be submitted to the Underwriter. Upon issuance of Insurance on the life of the Eligible Employee, the Third Party Administrator shall assign the Eligible Employee to a Rating Group identified in Exhibit "B," at the direction of the Committee, based upon the Underwriter's information. The Third Party Administrator shall forward all Insurance to the Trustee, but shall retain a copy of the Insurance policy.

b. **Notice of Rating Group Assignment.** Written notice of the Rating Group assignment for all Eligible Employee/Participants shall be sent to the Covered Employer by the Third Party Administrator within fourteen (14) business days from the Third Party Administrator's receipt of all the Insurance on the lives of the Covered Employer's Eligible Employees, along with a description of the fixed Contributions due as a result of the Rating Group assignments and the fixed Benefits associated with such Rating Group assignments.

c. **Binding Nature of Rating Group Assignment.** Both the Covered Employer and the Participants of such Covered Employer shall be bound by the determination of the Underwriter and Committee as to the Rating Group assignment of any Participant. The Underwriter and Committee shall have sole and absolute discretion with regard to the Rating Group assignment decision, and their decision shall be final and binding on the parties in all respects.

**4.03  Participation/Designation of Beneficiary.**

a. **Participation.** An Eligible Employee shall become a Participant in the Plan upon the *last* to occur of the following:

    i. The Qualifying Employer of the Eligible Employee has become a Covered Employer in accordance with Section 3.01;

    ii. the Underwriter issues a policy of Insurance on the life of the Eligible Employee;

    iii. the Eligible Employee is assigned a Rating Group as communicated by the Third Party Administrator and notice of such assignment is sent to the Covered Employer as described by Section 4.02.b, above;

    iv. the Covered Employer pays its Contribution to the Plan with respect to all Eligible Employee/Participants of that Covered Employer; and

    v. all Insurance on the Covered Employer's Eligible Employee/Participants and the fixed Contribution of the Covered Employer are received by the Trustee.

b. **Designation of Beneficiary.** Eligible Employees named in the Covered Employer's Adoption Agreement shall each fill out a designation of Beneficiary form as shown by the Exhibit "E," to the Adoption Agreement. The designation of Beneficiary form shall become effective upon the date that the Eligible Employee becomes a Participant under Section 4.03.a, and delivers the

designation of Beneficiary form to the Third Party Administrator by first class United States Mail.

    c.    **Automatic Beneficiary in the Event of No Designation.** In the event no designation of Beneficiary form is executed and delivered to the Third Party Administrator as set forth in Section 4.03.b, the Beneficiary of the Participant shall, first, be the Participant's legal spouse. If no legal spouse exists, the Beneficiary shall be deemed to be the Participant's legal estate under the laws of the state in which the Participant resided at the time of death. For purposes of this Section, "legal spouse" means the spouse of the Participant under the laws of the state in which the Participant resides on the date of the Participant's death.

    d.    **Assignment of Insurance.** Notwithstanding any provision of the Plan to the contrary, each Participant shall, as a condition to any entitlement to fixed Life Benefits or Death Benefits under the Plan, execute and deliver to the Plan such assignments or other written agreements necessary to cause the Insurance issued on the Participant's life by the Underwriter to be transferred and assigned to the Trust, and all proceeds from such Insurance payable upon the appropriate triggering event to the Trust.

**4.04.**    **Termination of Plan Participation.**

Participation in the Plan by Participants shall continue until the *first* to occur of the following:

    i.    the Participant dies and the fixed Death Benefit due any Beneficiary is paid by the Trustee as described by Article V;

    ii.    the Covered Employer's participation in the Plan is terminated by the Third Party Administrator because of the Covered Employer's default of the Adoption Agreement;

    iii.    the Covered Employer withdraws and any fixed Life Benefit due the Participant is transferred from the Plan;

    iv.    the Participant's participation in the Plan is terminated by the Third Party Administrator because the Committee has determined that termination is necessary in order to maintain the Plan's status as a Code § 419A(f)(6) Plan and any fixed Life Benefit is paid out of the Plan;

    v.    the Covered Employer terminates the Participant's employment or the Participant separates from employment and/or the full amount of any fixed Life Benefit is transferred from the Plan; or

    vi.    the Plan is terminated and any fixed Life Benefit due the Participant under the terms of the Plan is paid by the Trustee.

Any amount remaining in Trust under the Plan shall, upon termination of participation of any Participant and the payment of any fixed Benefits to the Participant or any Beneficiary, as applicable, become a Plan Asset and shall be used for the benefit of all Plan Participants and Beneficiaries to offset the reasonable and customary expenses of Plan administration, and may be placed in a reserve account or otherwise used for the uniform benefit of Plan Participants.

### 4.05   Notices Pertaining to Triggers for Benefits.

When an event that triggers the obligation of this Plan to pay Benefits occurs (i.e., a "Triggering Event") the Covered Employer, Participant, or an authorized representative of the Covered Employer or Participant shall give notice, in writing, to the Third Party Administrator.  The Third Party Administrator shall then request such documentation or evidence necessary to verify that a Triggering Event has, indeed, occurred.

## ARTICLE V

## ADMINISTRATION OF THE PLAN
## AND PAYMENT OF BENEFITS

### 5.01   Administration by Third Party Administrator.

**a.**   **Plan Administration.**  The administration of the Plan's affairs, excluding transactions involving Plan Assets assigned to the Trustee under the Trust Agreement, shall be undertaken by the Third Party Administrator.

**b.**   **Appointment of Third Party Administrator.**  The Third Party Administrator shall be appointed by the Sponsor with the approval of the Committee.  The Third Party Administrator's appointment and services, and payment for services, shall be described in a written agreement between the Plan and the Third Party Administrator.   In no event shall the Third Party Administrator be the Sponsor, or any entity in which the Sponsor owns a 50% or more interest in the voting power, the voting common stock or ownership interest of the entity.

**c.**   **Service and Termination of Service.**  Once appointed by the Sponsor, the Third Party Administrator shall serve in that capacity until:

**i.**   thirty (30) days have elapsed since the Sponsor has delivered to the Third Party Administrator a notice of removal; or

**ii.**   thirty (30) days have elapsed since the Sponsor's receipt of written notice of the resignation of the Third Party Administrator.

d.    **Appointment for Temporary Service as Trustee.** In the event that no person or entity has been appointed to serve as Trustee, the Third Party Administrator may ask the Committee to appoint an individual or entity to serve in that capacity on a temporary basis. In such event, the most recently executed Trustee Agreement then existing shall control the rights and obligations of the individual or entity the Plan Committee appoints as temporary Trustee.

e.    **Duty to Wind Up Plan Affairs.** In the event of any Third Party Administrator's removal or resignation, the Third Party Administrator shall have a fiduciary duty to assist the Sponsor, Committee and Trustee to wind up the affairs of the Plan as to the transactions involving the Third Party Administrator. This duty shall include the delivery of copies or originals of all documents and records of the Plan to the Sponsor or successor Third Party Administrator within a commercially reasonable time period, not to exceed six (6) consecutive calendar months.

**5.02    Powers of Third Party Administrator.**

The Third Party Administrator shall have the powers and authorities conferred upon it under this Plan, which shall include, but not be limited to the power to terminate a Covered Employer as provided by the Plan, to assign Eligible Employees to Rating Groups as determined by the Committee in reliance upon the Underwriter's information, to direct the Trustee to pay Benefits and expenses of the Plan, to receive designation of Beneficiary forms, to correspond with Underwriters, and to take actions required for the continued operation of the Plan as set forth herein.

**5.03    Payment of Fixed Benefits Under the Plan.**

a.    **Form of Fixed Benefit and Triggering Events.** The Third Party Administrator shall direct the Trustee to pay the fixed Death Benefit or Life Benefit upon receipt of written notice that an event triggering payment of Benefits under Section 5.03.b has occurred. Benefits due under the Plan may be paid in the form of a single lump sum cash payment, a series of payments in the case of Life Benefits paid for qualified medical costs or disability payments or, in the form of a policy of Insurance on the life of the Participant in an amount equal to the fixed Life Benefit due such Participant under the Rating Group to which the Participant is assigned, as appropriate to maintain the Plan under Code § 419A(f)(6).

b.    **Payment of Fixed Benefits—Triggering Events.** Subject to current authorities promulgated under Code § 419A(f)(6), fixed Benefits will be due and payable to a Participant or a Beneficiary in an amount specified by the Participant's assigned Rating Group, as shown by Exhibit "B," under the following circumstances:

i.    the Participant has died (a Death Benefit shall be paid);

ii. the Participant has terminated employment with the Covered Employer because of separation action by the Covered Employer (not to include the Participant's normal retirement, Total Disability, or illness that prevents the Participant from performing the essential functions of the job for a period exceeding twelve (12) work weeks (all or part of the Life Benefit shall be paid);

iii. the Participant has applied for reimbursement of tax-qualified medical expenses as defined by Code § 213 (all or part of the Life Benefit shall be paid).

iv. the Participant's participation has been terminated by the Third Party Administrator (a Life Benefit shall be paid);

v. the Covered Employer withdraws from the Plan (a Life Benefit may be transferred to another qualified welfare benefit plan and trust); or

vi. the Plan is terminated (a Life Benefit shall be paid).

The Trustee shall deliver the fixed Benefit due under the Plan by any commercially reasonable means within sixty (60) calendar days of the Third Party Administrator's receipt of notice of the occurrence of one of the events described, above. Where the fixed Benefit is a Life Benefit, the Trustee is authorized only to transfer the Life Benefit to a Code §§ 419A(f)(6), 419(e), or other employee welfare benefit plan sponsored by the Covered Employer, or pay such other cash distributions permitted by Code § 419A(f)(6) and the regulations promulgated thereunder as to standard welfare benefit triggers. Where the fixed Benefit is a Death Benefit, the Trustee shall pay the Death Benefit to the Beneficiary by delivering the Death Benefit via any commercially reasonable means within the time period provided herein.

c. **Forfeiture of Excess Proceeds to the Plan/No Reversion.** In the event proceeds from Insurance, of the cash value of Insurance exceed the amount of fixed Death Benefit or Life Benefit due any Participant or Beneficiary, or in the event the Third Party Administrator determines no Participant or Beneficiary exists to which to pay the fixed Benefit due under the Plan, the excess amounts or unpaid fixed Benefit amounts shall become Plan Assets available for use for the benefit of all Participants and Beneficiaries of the Plan and shall be utilized by the Trustee, at the direction of the Plan Committee, to defray the costs of Plan administration, including deposit into a reserve account, legal expense account or other uniform use for the benefit of all Plan Participants. In no event shall any excess proceeds of Insurance held in Trust, or any other Plan Asset, be utilized for the benefit of Covered Employers or revert to any Covered Employer or the Sponsor.

Master Plan Document.MMEWBP.04162007.025

d. **Forfeiture of Fixed Benefit upon Default of the Covered Employer.** In the event that the Covered Employer is determined by the Third Party Administrator to be in default of the Adoption Agreement, then all fixed Benefits of such Participants and Beneficiaries shall be immediately forfeited to the Plan. Such forfeited amounts shall become Assets of the Plan and shall be used for the benefit of all Participants and Beneficiaries of the Plan to defray the cost of Plan administration and may be allocated to contingency reserve accounts, legal defense accounts, or used for the uniform benefit of all Plan Participants in the discretion of the Plan Committee.

e. **Forfeiture of Fixed Benefit Because of Disqualifying Event.** In the event a Participant's death is caused by suicide occurring within the first two (2) years of the Participant's participation in this Plan or on account of an event for which any Insurance held in the Rating Group to which Participant is assigned is contractually excused from paying death benefits, then the Participant shall absolutely forfeit any right to any Benefit under this Plan.

f. **Forfeiture of Death Benefit Equal to the Aggregate of Life Benefits Utilized.** A Participant shall forfeit to the Rating Group that portion of any Death Benefit equal to the aggregate of all Life Benefits claimed by the Participant during the Participant's lifetime.

g. **No Anticipation or Alienation.** Until a fixed Death Benefit or Life Benefit is due and payable to a Participant or Beneficiary upon the occurrence of an event identified in Section 5.03.b, it shall be solely and exclusively the property of the Trust. Neither the Participant nor any Beneficiary may anticipate, alienate or assign any interest in the Benefit prior to the occurrence of an event specified in Section 5.03.b. Plan Assets held in Trust shall not be deemed the property of any Covered Employer, Participant or Beneficiary, and shall not be alienable, assignable or subject to lien or attachment by them or for their benefit.

5.04    **Other Duties of Third Party Administrator.**

It shall be the responsibility of the Third Party Administrator to undertake all record-keeping and disclosure responsibilities described by Article VII of the Plan and, at the direction of the Committee, any acts deemed necessary to assure the Plan's compliance with the requirements of Code § 419A(f)(6) and all Treasury Regulations promulgated there under, as these may be amended from time to time. Fees and costs, including necessary professional fees, incurred by the Third Party Administrator or authorized by the Committee in connection with the performances of these services shall be deemed reasonable costs of Plan administration and shall be paid by the Trustee from the Trust.

5.05    **Duties and Limitations.**

As to the duties and responsibilities ascribed to the Third Party Administrator under the Plan, the Third Party Administrator shall act with the knowledge and skill of a reasonably

Master Plan Document.MMEWBP.04162007.026

prudent person with experience and expertise in employee benefit plan administration. The Third Party Administrator's legal duties are limited to those activities specifically ascribed to that party under the Plan.

### 5.06   Delegation of Duties/Retention of Experts and Professionals.

With regard to its duties and responsibilities under this Plan, the Third Party Administrator may, with the permission of the Committee, retain such professionals or experts necessary to assist the Third Party Administrator to assure proper Plan administration, and may delegate its power and authority to such experts and professionals as is necessary to assure proper and prudent administration of the Plan. In no event, however, may the Third Party Administrator delegate all its duties and responsibilities ascribed to it under the Plan without the written approval of the Committee.

### 5.07   Fees and Expenses of the Third Party Administrator/Indemnification.

a.    **Compensation and Indemnification.** Subject to the approval of the Committee, the Sponsor and the Third Party Administrator (from time to time) shall agree, in writing, upon a schedule of fees to compensate the Third Party Administrator for its services performed under the Plan. The Third Party Administrator shall be entitled to:

i.    be paid reasonable compensation for all services rendered by it;

ii.    be paid reimbursement, upon request, for all reasonable expenses, disbursements and advances incurred or made by the Third Party Administrator in accordance with any provision of this Plan (including the reasonable compensation and the expenses and disbursements of its counsel and its agents), except any such expense, disbursement or advance as may be attributable to its gross negligence, violation of ERISA or breach of fiduciary duty, and

iii.    be held harmless from and against any loss, liability or expense incurred without gross negligence, breach of fiduciary duty, or violation of ERISA or applicable state law, arising out of or in connection with the acceptance or administration of its duties under the Plan, including the costs and expenses of defending itself against any claim or liability in connection with the exercise or performance of any of its powers or duties.

b.    **Payment of the Third Party Administrator for Services.** The Third Party Administrator shall be paid by the Trustee from the Sponsor's business account upon the approval of the Sponsor within thirty (30) days of the Trustee's receipt of an invoice from the Third Party Administrator or as otherwise set forth in the Third Party Administrator's services agreement with the Plan. If the Trustee fails to make any payment properly due the Third Party Administrator for

Final Master Plan-03                    20
January 2005

Master Plan Document.MMEWBP.04162007.027

its reasonable fees, costs, expenses and fees of attorneys, certified public accountants, recognized authorities in their field and agents (not employees of the Third Party Administrator) incurred in performance of its duties, the Third Party Administrator shall have a lien against the Trust for the amount of all fees, costs, charges, and amounts that may be rightfully due it. The lien granted the Third Party Administrator hereunder shall have priority over the claims of any Participant or Beneficiary against the Trust.

### ARTICLE VI

### TERMINATION OF PARTICIPATION OF COVERED EMPLOYER BY REASON OTHER THAN DEFAULT OF ADOPTION AGREEMENT OR WITHDRAWAL OF THE COVERED EMPLOYER

**6.01 Termination of Participation of Covered Employer.**

The Third Party Administrator, at the direction of the Committee, may terminate the participation of any Covered Employer, for the following reasons:

    i.    as specified in Section 3.04, above;

    ii.    the Covered Employer refuses to cooperate with the requests of the Third Party Administrator (A) for information pertaining to Participants and Beneficiaries;  or (B) for adjustment to Contribution amounts necessary to maintain the tax-qualified status of the Plan;

    iii.    because of the insolvency or bankruptcy of the Covered Employer;

    iv.    because the Covered Employer is a proprietorship or "d/b/a" (not a corporate entity, limited liability company, or partnership recognized by state law);

    v.    because all Benefits due Participants and Beneficiaries of the Covered Employer have been paid in full by the Plan; or

    vi.    because of the Covered Employer's failure to cooperate with the Third Party Administrator in the Plan's defense of an action or inquiry by a governmental agency including, but not limited to, the Internal Revenue Service.

**6.02 Manner of Termination of Participation.**

    **a.**    **Notice of Termination.**

    i.    Where termination of participation is directed by the Third Party Administrator or is due to termination of the Plan under Article VIII, a

Covered Employer's termination of participation shall be accomplished by the expiration of thirty (30) days from the date the Third Party Administrator sends notice to the Covered Employer in accordance with Section 3.05.

ii.     Where termination of participation is due to the withdrawal of the Covered Employer, the termination shall be accomplished by the expiration of thirty (30) days of the Third Party Administrator's receipt of notice from the Covered Employer of its desire to withdraw as provided in Section 3.05.

b.     **Winding Up the Covered Employer's Affairs.** Upon the expiration of the thirty (30) day time periods stated in Section 6.02.a, the Third Party Administrator shall direct the Trustee to pay to the Participants of the Covered Employer any fixed Benefit due to the Participants. Payment of the fixed Benefit may be in any form authorized by Section 5.03. Payment of the fixed Benefit shall be made within sixty (60) calendar days from expiration date of the thirty (30) day time period stated in Section 6.02.a.

c.     **Roll-Over of Fixed Benefit Amounts.** At the written direction of the Covered Employer, and with the written agreement of each Participant of the Covered Employer, the Third Party Administrator may direct the fixed Benefit amounts due the Covered Employer's Participants to be paid in the form of Insurance on the individual lives of the Participants. Such Insurance may be rolled directly to another Code § 419A(f)(6) 10 or more employer trust, a single employer trust under Code § 419(e), or other trust authorized by state or federal law. In the event of roll-over under this Section, the designation of Beneficiary forms held under the Plan shall be deemed null and void as to the Plan, and all obligations of the Plan and Trust satisfied as to the Covered Employer and its Participants and Beneficiaries.

## ARTICLE VII

## RECORDKEEPING AND DISCLOSURE REQUIREMENTS

**7.01    Maintenance of Records.**

The Third Party Administrator shall maintain records and documents pertaining to the Plan that are, in the opinion of the Committee, sufficient to demonstrate that the Plan satisfies Code § 419A(f)(6) and the Treasury Regulations promulgated there under. Records and documents maintained shall include, at a minimum:

i.     current and past master plan documents, Summary Plan Descriptions of the Plan and summaries of material modifications or amendments, if any;

ii.      current and past Trust Agreements;

iii.     all forms, returns and reports filed or submitted to any state or federal agency, including but not limited to the Internal Revenue Service;

iv.     all correspondence or other documents relating to any legal opinion, professional consultation, legal action, claim or defense of the Plan or Trust;

v.      Adoption Agreements, marketing materials and correspondence by and between Covered Employers, Participants and Beneficiaries of the Plan;

vi.     Copies of Insurance policies held in Trust and all materials and other records pertaining to Plan Assets;

vii.    accounting statements and records of accounting from the Trustee, annual reports of the Plan and independent auditor reports; and

viii.   actuarial studies and reports.

Master plan documents and Summary Plan Descriptions of the Plan shall be maintained for as long as the Plan is in existence and for seven (7) years following Plan termination. Other records and documents shall be maintained by the Third Party Administrator for a minimum period of seven (7) years from the date of origination, submission to any entity or person, or expiration.

**7.02    Delegation of Record Retention Responsibilities.**

The Third Party Administrator may, in writing, delegate the responsibility to maintain records of the Plan to a third party, including the Trustee.

**7.03    Annual Report/ Forms Required by Law.**

Within six (6) months following the last day of the Plan Year, the Third Party Administrator and the Trustee shall cause the Plan to issue a written annual report disclosing the financial transactions and investment performance of the Plan Assets, the number of Covered Employers and Participants, the value of all Insurance held in Trust, a description of the Rating Groups contained in the Plan and the performance of Plan Assets by Rating Group, and other material information pertaining to the Plan's financial status. The annual report shall include a report by an independent auditor. The fees and costs associated with the audit conducted by an independent auditor shall be deemed reasonable costs of Plan administration and shall be paid from the Trust by the Trustee. The six (6) month time period for making reports under this section may be extended with the consent of the Committee.

The Sponsor or Plan Committee shall cause to be filed, within the time periods established under applicable federal and state law, any tax forms, reports or returns necessary under Code § 419A(f)(6) and state laws pertaining to fully insured multiple employer welfare associations.

## 7.04   Mandatory Disclosures.

The Third Party Administrator will cause the following disclosures to be delivered to Covered Employers, Participants and Beneficiaries, as applicable:

      i.    a Summary Plan Description to Participants within ninety (90) days of the date the individual becomes a Participant;

      ii.    copies of the master plan document of the Plan, the Trust Agreement, the Summary Plan Description and the Adoption Agreement of the Covered Employer shall be delivered to the Covered Employer within thirty (30) days of the issuance of Insurance on the lives of the Participants of the Covered Employer; and

      iii.    copies of the Plan's annual report, along with a report of an independent auditor, shall be delivered to the Covered Employer and all Participants in the Plan before the expiration of six (6) calendar months following the last day of the Plan Year, or at such time as indicated by the Committee.

## 7.05   Inspection of Books and Records.

Upon the receipt of reasonable written notice (not less than fourteen (14) days), the Third Party Administrator and Trustee shall make available for inspection all plan documents, books, records, Plan disclosures and communications concerning any Covered Employer to that Covered Employer. Upon the receipt of reasonable written notice (not less than fourteen (14) days), the Third Party Administrator and Trustee shall make available for inspection all plan documents, books, records, notices and disclosures pertaining to the Plan to the Internal Revenue Service or other federal or state agency with authority or jurisdiction over matters pertaining to Code § 419A(f)(6) plans or to the Sponsor. This duty to permit inspection, however, shall not constitute a waiver by the Plan of the right and obligation of the Third Party Administrator to defend the Plan against invasions of privacy, disclosure or over-broad discovery efforts. Inspections of Plan records shall be conducted during normal business hours at the offices of the Sponsor.

Master Plan Document.MMEWBP.04162007.031

## ARTICLE VIII

## AMENDMENT AND TERMINATION OF THE PLAN
## AND MISCELLANEOUS ADMINISTRATIVE MATTERS

**8.01   Plan Amendment.**

The Plan, Trust Agreement and any Adoption Agreement may be amended by the Sponsor with the approval of the Committee, in their respective sole and absolute discretion.  No amendment or modification shall reduce the amount of fixed Benefit attributable to a Participant or Beneficiary under the terms of the Plan and as set forth in Exhibit "B" (as may be amended to accommodate investment performance of Plan Assets or to assure compliance with Code § 419A(f)(6)) where the Covered Employer has paid required Contributions under its Adoption Agreement.

**8.02   Plan Termination.**

The Plan and Trust Agreement may be terminated at any time by the Sponsor at the direction of the Committee.  Termination of the Plan shall constitute a corresponding termination of the Trust Agreement and Trust.  In the event of termination of the Plan and Trust Agreement the following provisions shall control:

    **a.**    **Notice of Plan Termination.**  The Third Party Administrator shall notify all Covered Employers and Participants of the Plan termination and the effective date of such termination by written notice.

    **b.**    **Duties of Third Party Administrator and Trustee and Final Disclosures.**  In the event of Plan termination the Third Party Administrator and Trustee shall, at the Committee's direction, take whatever action is necessary and reasonable to properly wind up the affairs of the Plan and maintain the Plan's qualification for Code § 419A(f)(6).  After the distribution of all Plan Assets is accomplished, the Third Party Administrator and Trustee shall jointly prepare and distribute to the Sponsor, Committee Covered Employers, Participants and any Beneficiaries to whom fixed Benefits remain payable, a final report and accounting of the Plan disclosing all financial transactions, payments and disbursements from the Trust.  The final report shall include a report and certification of an independent auditor.

    **c.**    **Rights of Participants.**  In the event of termination of the Plan, Participants shall be entitled to receive that fixed Benefit specified by their Rating Group and the duration of their participation in the Plan as shown by Exhibit "B."  The Trustee shall deliver the fixed Benefits to Participants within sixty (60) days of the effective date of the Plan termination as stated in the Third Party Administrator's notice.

d.   **Excess Plan Assets.**   Any Plan Assets not allocated and distributed to Participants or used to pay the costs of administering and winding up the business affairs of the Plan shall be contributed to a 501(c)(3) charitable organization specified by the Sponsor. The Sponsor Committee, Third Party Administrator and Trustee shall have no liability to any Participant or Employer as a result of these instructions.

e.   **Finality of Termination.**   The affairs of the Plan and Trust shall be deemed settled and resolved if, upon the expiration of ninety (90) days from the date of the delivery of the final report and accounting of the Plan and Trust as specified in Section 8.02.b, no notice of contest or claim is delivered to the Third Party Administrator by any Covered Employer, Participant or Beneficiary. The expiration of the ninety (90) day period stated herein shall constitute a final and conclusive legal bar and statute of limitations with regard to any further claim, dispute, cause of action or proceeding against the Plan, Trust, Trustee, Third Party Administrator, Committee or Sponsor with respect to the Plan or Trust as to the Covered Employers, Participants or Beneficiaries who have failed to provide notice required under this Section 8.02.e.

**8.03   Fiduciary Appointments/Termination of Sponsor.**

The Plan Committee is authorized to make such appointments and delegations of authority and powers as necessary to assure the continued operation of the Plan's affairs, and such parties appointed shall be deemed fiduciaries of the Plan within the scope of their responsibilities and duties to the Plan.

**8.04   No Employment Contract.**

Nothing contained herein shall be construed to give rise to a contract of employment by or between a Covered Employer and any Participant of the Plan.

**8.05   Benefits.**

Nothing in this Plan shall be construed to confer any right or claim upon any person other than the Covered Employers, the Participants and Beneficiaries. In no event shall Beneficiaries possess rights in excess of those expressly conferred upon Participants in the Plan.

**8.06   No Guarantees/Resolutions of Disputes.**

a.   **No Guarantee.**   Neither the Sponsor, the Committee, the Third Party Administrator nor Trustee guarantees or assures the Trust against losses and/or depreciation of its values. No Benefit shall be payable unless and until the Third Party Administrator has verified the occurrence of the event giving rise to the Plan's duty to pay Benefits.

b.      **Disputes.** Contests or disputes arising under the Plan may be filed by the contesting Covered Employer, Participant or Beneficiary by sending written notice to the Third Party Administrator at the address identified in the Summary Plan Description.

c.      **Determination/Resolution of Disputes.** In the event a Participant, Beneficiary or Covered Employer contests the Third Party Administrator's determination regarding a claim for Benefits under the Plan, the contest shall be determined by the Committee in its sole and absolute discretion. The decision of the Committee shall be final and binding on the Participant, Beneficiary or Covered Employer. The Committee has sole and absolute discretion to interpret the provisions of the Plan and, in the event of any dispute or contest, its decision is final and binding on all parties. The Committee may establish appeal and dispute resolution procedures for the Plan and these shall be published in the Summary Plan Description.

**8.07    Withholding of Taxes and Legal Defense Fund.**

Trustee and any Underwriter shall withhold any taxes from the Trust Fund or from any distributions required to be made to Participants, Beneficiaries or otherwise which, by operation of any present or future law, is required to be withheld.

At the direction of the Committee, the Trustee or the Sponsor may hold in a separate business account a certain amount of administrative fees of the Covered Employers for the sole and exclusive purpose of providing a legal defense fund to be used for the benefit of all Plan Participants and their Beneficiaries to defend the Plan against challenge by the Internal Revenue Service, the Department of Labor or regulatory state agency. In the event such a legal defense fund is established, the amount of administrative fees to be invested by the Trustee for such fund shall be disclosed to each Covered Employer in a written agreement. Disbursements from the legal defense fund shall be made only after providing notice to the Committee.

**8.08    Duty to Investigate.**

The Third Party Administrator or Trustee shall have no obligation to determine, with or without investigation, the identity or mailing address of any Participant or Beneficiary entitled to any Benefits. The Third Party Administrator or Trustee shall have discharged their duties hereunder when they have transmitted Benefits payments, records, notices and other requisite documents, by First Class United States Mail, to the last address of the Covered Employer or its Participants and their Beneficiaries reported in writing to the Third Party Administrator by the Covered Employer.

**8.09    Third-Party Rights.**

Neither the creation of this Trust, the establishment of the Plan, nor the creation or existence of the Plan Assets, shall be construed to give any Participant or any other

person, any legal right against the Committee, Third Party Administrator, Trustee, Sponsor or any other person or entity except as otherwise expressly provided for herein.

**8.10  Status and Adequacy of the Trust Fund.**

**a.  One Fund and One Plan.** The Plan Assets held in Trust under the Trust Agreement, including any Insurance issued on the life of any Plan Participant, shall constitute one fund held under a single multiple employer plan.

**b.  Status of Insurance Policies.** Insurance held in Trust under the Plan shall be deemed part of the Plan Assets and any payments from such policies or contributions to such policies shall be deemed payments from and contributions to the Plan.

**c.  Benefits From Plan.** Any Benefits payable pursuant to the terms of this Plan to a Participant or Beneficiary of a Covered Employer shall be paid or provided solely from the Plan Assets. Neither the Sponsor, the Plan Committee, the Third Party Administrator, nor the Trustee, assumes any liability or responsibility for the adequacy thereof.

**8.11  Receipt and Release for Payments.**

Any payment of Benefits to any Participant, his legal estate, legal representative or Beneficiary, shall to the extent thereof, be in full satisfaction of all claims against the Plan, the Trustee and the Covered Employer, either of whom may require such Participant, his legal estate, legal representative or Beneficiary to execute a receipt and release thereof in such form as shall be determined by the Third Party Administrator as a condition of receipt of Benefits.

**8.12  Direct Transfers.**

This Plan may accept direct transfers of funds, including Insurance, from trustees of other Code § 419A(f)(6) plans and from single employer welfare benefit plans under Code § 419. On behalf of the Plan, the Trustee may accept direct transfers of funds or Insurance at the direction of the Plan Committee.

**8.13  The Plan.**

This Plan, Trust and the Adoption Agreement are both part of a single, integrated agreement entered into for the purpose of providing employee welfare benefits and shall be construed together. In the event a provision of any Summary Plan Description of this Plan conflicts with this Plan, the terms of the Plan will control. In the event the Employer without the express written approval of the Administrator and the Trustee makes any change in the Adoption Agreement, and such change is inconsistent with the terms of the Plan, the terms of this Plan shall govern.

Master Plan Document.MMEWBP.04162007.035

**8.14 Reinsurance.**

The Trustee is empowered to secure such Insurance or reinsurance as the Trustee deems necessary and appropriate to secure the financial obligations of the Plan.

**8.15 Agent for Service of Process.**

The Third Party Administrator is hereby designated as Agent for Service of Process for all disputes arising from the Plan.

**8.16 Severability.**

If any provision of the Plan or Trust shall be determined to be invalid or unenforceable, the remaining provisions hereof shall continue to be fully effective.

**8.17 Applicable Law.**

The construction and validity of the Plan, Trust Agreement, Adoption Agreements and other documents pertaining to the Plan shall be determined according to the laws of the State of Mississippi to the extent such laws are not pre-empted by federal law.

**8.18 Construction.**

The Committee shall have the sole and absolute discretion and authority to construe the terms of the Plan. Where any words are used in the Plan in the masculine, they shall be construed as though they were used in the feminine in all cases where they would so apply; and wherever any words are used herein in the singular or plural, they shall be construed as though they were used in the plural or singular, as the case may be, in all cases where they would so apply. Titles of Articles and Sections hereof are for general information only, and the Plan is not to be construed by reference thereto. Capitalized terms used herein shall have their meanings as defined in the Plan unless the context clearly indicates to the contrary.

**END OF PLAN TERMS**

Master Plan Document.MMEWBP.04162007.036

IN WITNESS WHEREOF, the Sponsor has adopted and executed this Plan with the approval of the Plan Committee, as amended as of the 1st day of January, 2005.

BY: _____

MILLENIUM MARKETING GROUP, LLC

Master Plan Document.MMEWBP.04162007.037

## EXHIBIT "A"

## ADOPTION AGREEMENT

Master Plan Document.MMEWBP.04162007.038

## EXHIBIT "B"

### RATING GROUP IDENTIFICATIONS
### WITH FIXED CONTRIBUTION
### AND SCHEDULE OF FIXED BENEFIT AMOUNTS

**Please see the Rating Group Master Binder**
**which is incorporated herein by reference and made a part hereof**

Master Plan Document.MMEWBP.04162007.039

## EXHIBIT "C"

### INSURANCE PRODUCTS OFFERED UNDER THE PLAN

## ADOPTION AGREEMENT
### UNDER THE MILLENNIUM
### MULTIPLE EMPLOYER WELFARE BENEFIT PLAN[1]

This ADOPTION AGREEMENT ("Agreement") is entered into by and between _WESTFALL CONSTRUCTORS LTD_ ("Employer") and the Millennium Multiple Employer Welfare Benefit Plan (the "Plan"), effective this _3_ day of the month of _MAY_, 200 _4_.

The Employer desires to adopt the Plan and to be bound by the Plan's terms as set forth in the Plan, the Trust Agreement under the Plan, and this Adoption Agreement. The terms and conditions of the Employer's adoption and participation in the Plan are as follows:

**1.   The Employer is:**

Name: _WESTFALL CONSTRUCTORS LTD_

a: corporation, ~~limited liability company~~, limited liability partnership, professional corporation, partnership (circle one), under the laws of the State of _TX_.

Address: _3835 DACOMA   HOUSTON, TEXAS   77092_

**2.   The Primary Contact for the Employer is:**

Name: _G. E. O'NEILL_

Phone Number: _713 681 6160_   Fax Number: _713 681 6155_

e-Mail Address: _JONEILL@WESTFALLGROUP.COM_

**3.**   The Tax or Fiscal Year of the Employer is: _DECEMBER 31/04_ and Employer is a (circle one) accrual/cash basis tax payer.

**4.   The Employer acknowledges and agrees that:**

   A.   The Employer has been delivered a copy of the Plan and is, upon execution of this Adoption Agreement, bound by the Plan's terms.

   B.   The Employer shall become a Covered Employer for purposes of the Plan upon the last to occur of the following events:

   i.   the Third Party Administrator receives this Adoption Agreement, fully executed by a person authorized to sign such documents;

---

[1] Copyright 2002, Millennium Marketing Group, LLC, Patent Pending 2002

Final Adoption Agreement-01
March 2003



EXHIBIT
C

ii.     a Resolution/Consent of the Board of Directors or other governing body of the Employer authorizes the execution and delivery of the Adoption Agreement as set forth above, or ratifies such execution and delivery, and a copy of such resolution or consent is received by the Third Party Administrator;

iii.    the initial Contributions or other initial payments identified in this Adoption Agreement at Exhibit "D" are placed into the Escrow Account for forwarding to the Trustee when Insurance is issued;

iv.     Insurance identified by Exhibit "A" to this Adoption Agreement on the lives of those Eligible Employees the Employer intends to be Participants in the Plan are issued to the Trust and received by the Trustee.

In the event an Employer's chosen Participant/Employee(s) is rejected by an Underwriter, the Contribution attributable to that (those) Participant/Employee(s) will be refunded from the Escrow Account. Administration costs, however, are non-refundable.

C.     Once all the events identified in subsection "B," above have occurred, the Employer will be deemed a "Covered Employer" under the Plan and will remain such until one or more of the following events **first** occurs:

i.      the Covered Employer ceases to make Contributions as identified in this Adoption Agreement or is otherwise deemed by the Third Party Administrator to be in default of the Adoption Agreement;

ii.     thirty (30) days have expired since the Third Party Administrator sent written notice to the Covered Employer in a manner specified by subsection "D," below, that the Covered Employer's participation is to be terminated for any reason for which the Third Party Administrator is authorized to provide such notice of termination to a Covered Employer under this Plan in non-default situations;

iii.    the Plan is terminated;

iv.     thirty (30) days have expired since the Covered Employer provided the Third Party Administrator with written notice in a manner specified by subsection "D," below, that the Covered Employer wishes to withdraw from the Plan, and the Third Party Administrator has received such notice;

v.      the last of all Insurance issued on the lives of Eligible Employee/Participants of the Covered Employer lapse, are cancelled or are terminated by the insurance company issuing such policies; or

vi.   the last of any fixed Death Benefits or Life Benefits due and owing under the terms of this Plan and the Adoption Agreement are paid to Eligible Employee/Participants of the Covered Employer or their designated Beneficiaries.

D.   Written notices by and between any Covered Employer and the Third Party Administrator shall be addressed as identified in the Adoption Agreement and shall be sent by certified mail, return receipt requested, or by next day delivery, return receipt requested by any commercial carrier.

E.   The Employer further acknowledges:

i.   Each Eligible Employee/Participant of the Employer shall be assigned to a Rating Group by the Plan Committee, based upon risks commonly recognized and actuarially taken into account by providers of death benefits or cash surrender value benefits in the insurance industry;

ii.   The Employer's fixed Contribution amount will be based upon an aggregate of all fixed Contribution amounts associated with all the Rating Groups to which the Employer's Eligible Employee/Participants are assigned.   The Employer's initial Contribution shall be deposited into the Sponsor's Escrow Account, and held there **without bearing interest,** until such time as Insurance identified in this Adoption Agreement has been issued and the initial Contribution is deposited into Trust under the Plan;

iii.   The Benefits received by each Participant (or a designated Beneficiary of the Participant) of the Employer shall be a guaranteed fixed amount determined by the Rating Group to which each Participant of all Covered Employers in the Plan is assigned and the length of time of participation;

iv.   As to Plan Assets, the risk of gains or losses shall be born by all Participants in the Plan within an assigned Rating Group, regardless of which Covered Employer employs them;

v.   In no event, shall all or part of any Plan Assets or other sums held in Trust be paid to, accounted to or credited or deducted from an account of any particular Covered Employer participating in the Plan or any Eligible Employee/Participants of such Covered Employer;

vi.   If the Employer withdraws from the Plan, or the Plan is terminated, the Plan will pay only the fixed amount of Life Benefit attributable to the Rating Group assignment of each Participant of the Covered Employer as shown by Exhibit "B" to the Plan. Any excess amounts shall be forfeited to the Plan and shall be used to defray the normal costs of Plan administration for the benefit of

all Participants and Beneficiaries of all Covered Employers participating in the Plan;

vii.    The Plan is not required by pay any Benefits to any Participant under the Plan where the Participant's death results from suicide committed within two years of issuance of Insurance on the life of the Participant or for any other reason for which any Insurance in the Participant's assigned Rating Group is excused from paying death benefits.

viii.    A description of the Insurance and Underwriters selected by the Employer to insure the lives of the Covered Employer's Participants is attached hereto as Exhibit "A."  The Employer has had an opportunity to review and consider a number of different Insurance products, including fixed, indexed, declared interest and variable interest life products, and has considered the risks and benefits associated with each, prior to selecting the Insurance identified in Exhibit "A";

ix.    The Employer is obligated to provide to the Third Party Administrator current contact information (i.e. address and telephone number) of all Eligible Employee/Participants of the Covered Employer within thirty (30) days of the commencement of each tax year of the Covered Employer; and

**F.    Each Employee of the Employer must satisfy the following requirements in order to become a Participant of the Plan, subject to the Plan's terms and conditions:**

**i.    Service Requirement:**

Employees of the Employer must work a total of ___/___ years for the Employer prior to the commencement of the Plan Year in order to be eligible to participate in the Plan.  An Employee shall be deemed to have worked for one (1) year in each Plan Year (as shown above) that the Employee works 1000 hours or more.

**ii    Minimum Age:**

Employees of the Employer must be at least _18_ (note: must be in excess of eighteen (18)) years of age at the time of entry into the Plan.

**iii.    Class Participation and Design:**
**The Employer chooses the following classes of Employees to participate in the Plan:**

[Check the box indicating chosen classes]

☐ **Class "1,"** defined or identified as follows:_____

_PRESIDENT_ _____

_____

_____

☐ **Class "2,"** defined or identified as follows:_____

_CONTROLLER_ _____

_____

_____

☐ **Class "3,"** defined or identified as follows:_____

_VICE PRESIDENT_ _____

_____

_____

☐ **Class "4,"** defined or identified as follows:_____

_____

_____

iv.   **Excluded Employee(s):**

Notwithstanding the above, Employees who are covered by a collective bargaining agreement shall not be eligible to participate in the Plan.  **In addition, the following classes of Employees SHALL NOT be eligible to participate in the Plan:**

**CIRCLE YES OR NO**

Leased or temporary employees?                     (Yes)                No

Employees who work less than 40 hours per week?    (Yes)                No

Others as described herein:_____

_____

_____

iv.    **Disclosure of Family Relationships:**

The Employer discloses that the following family members (i.e., spouses, children, parents, brothers, sisters) of Employees eligible for participation in the Plan are currently Plan Participants:

PATRICIA WESTFALL & TIMOTHY WESTFALL
DAUGHTER                    SON

G.    **Once eligibility requirements are met, an Eligible Employee will become a Plan Participant upon the last to occur of the following events:**

i.    The Qualifying Employer of the Eligible Employee has become a Covered Employer;

ii.    The Underwriter issues a policy of Insurance on the life of the Eligible Employee;

iii.    The Eligible Employee is assigned a Rating Group by the Committee and notice of such assignment is sent to the Employer by the Third Party Administrator;

iv.    The Employer pays its Contribution to the Plan with respect to all Eligible Employee/Participants of the Employer; and

v.    All Insurance on the Employer's Eligible Employee/Participants and the fixed Contribution of the Covered Employer are received by the Trustee.

**Participants will remain in that status, and will continue participation under the**

Plan until their respective participation ceases as set forth in the Plan. Eligible Employees of this Employer are identified in Exhibit "B," attached, hereto. Beneficiaries of the Eligible Employees, once they are Participants, shall be designated as shown in Exhibit "C."

5.  **Contribution/Benefit Design:**

For purposes of the Plan, the following WILL OR WILL NOT (circle one) be considered as "Compensation," notwithstanding the Plan's terms:

     i.    W-2 Income
     ii.   Guaranteed cash payments from the Employer
     iii.  Bonuses
     iv.  Overtime
     v.   Commissions
     vi.  Employer contributions to a tax-qualified retirement plan
     vii. Other:_____

Subject to the provisions of the Plan, the Employer chooses the following Contribution and Benefit Arrangement (circle the chosen option(s) and indicate for which Class of Employees the Contribution choice is made):

A.  A fixed, annual Contribution in the amount of:

    $_____, for Class 1,

    $_____, for Class 2,

    $_____, for Class 3, and

    $_____, for Class 4.

B.  The amount of Contribution that yields a fixed Death Benefit in the amount of:

    $ *2,075,000*, for Class 1,

    $ *825,000*, for Class 2,

    $ *1,325,600*, for Class 3, and

    $_____, for Class 4.

C. The amount of fixed Death Benefit and/or Life Benefit that, given the Rating Group of the Employer's Eligible Employee/Participants, can be purchased with the aggregate fixed Contribution of $_____, payable as follows:

$_____, for Class 1,

$_____, for Class 2,

$_____, for Class 3, and

$_____, for Class 4.

D. The amount of Contribution equal to $_____, per Eligible Employee/Participant, regardless of the amount of fixed Death Benefit or Life Benefit that, given the Rating Group assignment, the Plan will be obligated to pay.

E. The amount of Contribution that equals the aggregate of _____% of Compensation of Eligible Employee/Participants, as defined by the Plan and as set forth in this Adoption Agreement, below, regardless of the amount of fixed Death Benefit or Life Benefit that, given the Rating Group assignment, the Plan will be obligated to pay.

**Given the Contribution/Benefit design chosen above, the Employer acknowledges and agrees that its Contribution amount, and the administrative fee(s) associated with its participation in the Plan as a Covered Employer is shown by Exhibit "D," attached hereto and made a part hereof.**

Initial Contributions shall be made payable to the Millennium Marketing Group, LLC, Escrow Account, where they will be held without interest until Insurance is issued by the Underwriter. Subsequent Contributions shall be made payable to the Millennium Multiple Employer Welfare Benefit Plan. Payments for administrative expenses shall be made payable to Millennium Marketing Group, LLC Business Account.

F. In addition to the Death Benefit, the following Life Benefits will be payable to Participants when the Participants demonstrate qualification for such Life Benefits:

[Check Each that Apply]

____ Fixed Lump Sum Life Benefit upon Participant's Separation from Employment.

____ Partial or Lump Sum Life Benefit upon Participant's Total Disability.

____ Partial or Lump Sum for reimbursement of tax-qualified medical expenses or other hardship as provided by the Plan and as demonstrated to the Plan Committee in their absolute discretion.

Death Benefits will be decreased by amount of Life Benefits paid from the Plan.

**6.    Amendment:**

The Employer may amend this Adoption Agreement only in writing and with the written permission of the Plan Committee. Employer hereby grants and delegates to the Plan Sponsor the power to amend and modify the Plan. The Employer hereby ratifies, approves and confirms all prior Amendments made to the Plan or Trust. The Employer agrees to execute additional Adoption Agreements, at the request of the Administrator or the Trustee, in order to ratify and confirm the matters set forth herein. By adopting this Adoption Agreement, Employer acknowledges that it has no power to amend or terminate the Plan.

**7.    Indemnification:**

By executing the Adoption Agreement, each Employer hereby agrees to defend, indemnify and hold the Committee, the Third Party Administrator, the Underwriter, and the Trustee, and each of them harmless from and against any liability, claim, action, suit, loss or cost or expense, including without limitation, attorney's fees and cost of court, arising from or in connection with any of the following matters: (a) following or carrying out any directions given pursuant to the terms of the Plan or Trust; (b) carrying out or executing any of its responsibilities in connection with the Plan or Trust, including any responsibilities performed pursuant to the direction of any party; (c) the payment of any tax due with respect to or levied upon the Trust by any federal, local, or state taxing authority, to the extent assets held by the Trust are insufficient to pay such tax; or (d) any action or omission of the Committee, the Third Party Administrator, the Underwriter or the Trustee performed, in good faith, in connection with maintenance or administration of the Plan or Trust, provided that each is authorized or permitted to perform or omit such act under the Plan or Trust. The foregoing indemnification shall extend to any Employee, officer, director or agent of the Committee, the Third Party Administrator, the Underwriter or Trustee. Notwithstanding the foregoing, in no event shall the indemnification provided by this paragraph require that the Committee, the Trustee, the Underwriter, or the Third Party Administrator be indemnified for any action taken or omitted which constitutes gross negligence, breach of fiduciary duty, or willful misconduct.

**8.    No Tax Advice:**

The Employer represents and warrants to the Committee, the Third Party Administrator, the Underwriter, and the Trustee that it has determined to participate in the Plan only after seeking the advice of independent counsel concerning the tax consequences of the Employer's participation in the Plan, and that the Employer has not relied upon either the Committee, the