IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

FRED WESTFALL, et al.,           §
                                 §
                Plaintiffs,      §
                                 §  Civil Action No. 3:08-CV-0996-D
VS.                              §
                                 §
NORMAN H. BEVAN, et al.,         §
                                 §
                Defendants.      §

MEMORANDUM OPINION
AND ORDER

        Plaintiffs' motion to remand presents the question whether
their state-law fraud claim and related claims are completely
preempted by the Employee Retirement Income Security Act of 1974
("ERISA"), 29 U.S.C. §§ 1001-1461.  Concluding that they are not
completely preempted and that the court lacks subject matter
jurisdiction, the court grants plaintiffs' motion and remands this
case to state court.

I

        The following background facts are drawn from plaintiffs'
state-court amended petition ("amended complaint").  In late 2001
plaintiffs Fred Westfall, Timothy Westfall, Patricia Westfall
Gonzales, and Westfall Constructors, Ltd. ("Westfall Constructors")
(collectively, "the Westfalls") met with defendant Raymond Wicker
("Wicker"), an insurance agent, to discuss investing in the
Advantage DBO Plan ("DBO Plan").  Wicker represented that the DBO
Plan offered attractive long-term returns and complied with § 419
of the Internal Revenue Code, providing favorable tax benefits,

including fully deductible contributions. Wicker advised the Westfalls that they could reduce or discontinue future annual contributions without adverse financial consequences. The Westfalls allege that Wicker further indicated "in some innocuous way" that the DBO Plan would incidentally involve life insurance policies issued by defendant American General Life Insurance Company ("American General") that insured the lives of the individual plaintiffs. Am. Compl. § 5.05. The Westfalls assert that these representations led them to invest in the DBO Plan. The DBO Plan was dissolved in 2003, and the Westfalls aver that their investments were transferred by Wicker and defendant Scott Ridge ("Ridge") to defendant Millennium Multiple Employer Welfare Benefit Plan ("Millennium Plan"). The Westfalls posit that the same representations were made to them regarding the Millennium Plan.

According to the Westfalls, in a 2007 private letter ruling, the Internal Revenue Service ("IRS") ruled that the Millennium Plan did not qualify under § 419. Defendant Jonathan Cocks ("Cocks"), the putative Chairman of the Millennium Plan Committee, advised investors in the Millennium Plan to amend their tax returns accordingly. The Westfalls aver that they have been required to pay substantial tax penalties and interest due to an IRS audit of the DBO plan, and that the IRS is currently investigating the Millennium Plan. They further allege that they have lost most of their investment because they did not annually make plan

contributions at the same level as their initial contribution.

The Westfalls maintain that their investment in the Millennium Plan amounted to nothing more than the purchase of life insurance policies. They allege that the Millennium Plan was designed to generate substantial commissions by selling unfavorable policies that purportedly offered counterbalancing tax benefits. They aver that 85% of their first annual contribution was "funneled" by American General to Wicker, Ridge, and defendants Norman H. Bevan ("Bevan") and Innovus Financial Solutions, Inc. ("Innovus"), Bevan's company. Am. Compl. § 5.06. They further allege that they were never informed of the nature of the life insurance policies, e.g., their face value, and that this "concealed and perpetuated" the initial misrepresentations. *Id.* The Westfalls contend that they would not have invested in the Millennium Plan but for these misrepresentations and for subsequent concealment of these misrepresentations.

Defendants[1] dispute this characterization of the Millennium Plan. They maintain that it is an "employee welfare benefit plan" and a "multiple employer welfare arrangement" under ERISA, *see* 29 U.S.C. § 1002(1), (40) (2006), relative to which Westfall

_____

[1]American General filed a response and brief in opposition to the Westfalls' motion to remand. Millennium Marketing Group, LLC ("Millennium Marketing"), Innovus, and Bevan filed a response adopting American General's legal arguments. Therefore, in discussing these arguments, the court will refer to American General, Millennium Marketing, Innovus, and Bevan collectively as "defendants."

Constructors is a covered employer and the individual plaintiffs are participants. They posit that defendant Millennium Marketing Group, LLC is the plan sponsor, defendant Cocks is the Chairman of the Millennium Plan Committee, defendant Republic Bank and Trust ("Republic") is the plan trustee, and defendant SecurePlan Administrators, LLC ("SecurePlan") is the third-party administrator. The Westfalls counter that the Millennium Plan is in fact controlled by Bevan and Ridge.

The Westfalls sued defendants in Texas state court, asserting claims for fraud and negligent misrepresentation, constructive trust, fraudulent concealment, civil conspiracy, and violations of the Texas Insurance Code and the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-17.826 (Vernon 2002 & Supp. 2008). They seek rescission of their investment, actual and punitive damages, attorney's fees, and other relief. With the consent of the other defendants, American General timely removed the action to this court, contending that the court has federal question jurisdiction because the Westfalls' state-law claims are completely preempted by ERISA. The Westfalls now move to remand.

## II

Having removed the case, defendants have the burden of overcoming an initial presumption against jurisdiction and establishing that removal is proper. *Carnes v. Data Return*, *LLC*,

2005 WL 265167, at *1 (N.D. Tex. Feb. 1, 2005) (Fitzwater, J.) (citing *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001)). Where, as here, the parties are not completely diverse, an action is removable only if it involves a "claim or right arising under the Constitution, treaties or laws of the United States." 28 U.S.C. § 1441(b) (2006). The removal statute implicates federalism concerns and therefore should be strictly construed. *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 921-22 (5th Cir. 1997). "[D]oubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

Because the Westfalls' state-court amended complaint does not on its face state any claim that arises under federal law, defendants can establish subject matter jurisdiction only if ERISA completely preempts at least one of the Westfalls' state-law claims. *See infra* § III (addressing complete preemption as an exception to the well-pleaded complaint rule). On this issue, the parties advance two lines of argument. First, assuming that the Millennium Plan is governed by ERISA, they dispute whether that statute completely preempts plaintiffs' claims. Second, they disagree about whether the Millennium Plan is an ERISA plan.[2] The

_____

[2]In connection with this argument, defendants move the court to defer a ruling on the remand motion, contending that limited discovery is needed to determine whether the Millennium Plan is an ERISA plan. Given the grounds for the court's decision, no discovery is needed, and the court denies this motion as moot.

court will assume that the Millennium Plan is governed by ERISA. It nevertheless concludes that defendants have failed to establish that at least one of plaintiffs' claims is completely preempted.

III

Complete preemption is a jurisdictional doctrine that is an exception to the well-pleaded complaint rule. Under that rule, federal question jurisdiction "exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint" and not merely by way of an anticipated defense. *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (internal quotation marks omitted). The well-pleaded complaint rule makes the plaintiff the master of the claim and allows him to "'avoid federal jurisdiction by exclusive reliance on state law,'" even if federal claims are available. *McLaren v. RailAmerica, Inc.*, 2001 WL 366431, at *1 (N.D. Tex. Mar. 21, 2001) (Fitzwater J.) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398-99 (1987)). The complete preemption doctrine, however, "'recharacterizes'" certain state-law claims "as 'arising under' federal law for the purposes of determining federal question jurisdiction." *McClelland v. Gronwaldt*, 155 F.3d 507, 516 (5th Cir. 1998), *overruled in part on other grounds by Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 (5th Cir. 2003) (en banc). It applies where Congress has preempted an entire area such that "any civil complaint raising this select group of claims is necessarily federal in character." *Arana*, 338

F.3d at 437 (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987)). "'Because they are recast as federal claims,'" state-law claims that are completely preempted provide a basis for removal. *McLaren*, 2001 WL 366431, at *2 (quoting *McClelland*, 155 F.3d at 512).

Complete preemption applies under ERISA § 502(a), the statute's civil enforcement provision. Congress "designed [ERISA] to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983). As part of its comprehensive regulation of employee benefit plans, the statute contains "six carefully integrated civil enforcement provisions." *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 209 (2004) (internal quotation marks omitted); *see also* 29 U.S.C. § 1132 (entitled "[c]ivil enforcement"). These represent deliberate congressional policy choices that "would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Aetna Health*, 542 U.S. at 208-09 (internal quotation marks omitted). Because of this clear intent to make ERISA's remedies exclusive, state-law causes of action that duplicate, supplement, or supplant the remedies that § 502(a) provides are displaced. *Id*. at 209; *see also Haynes v. Prudential Health Care*, 313 F.3d 330, 333 (5th Cir. 2002) ("In general, complete preemption exists when a remedy falls within the scope of or is in direct conflict with

ERISA § 502(a), and therefore is within the jurisdiction of federal court." (citing *Taylor*, 418 U.S. at 66)). Nonetheless, § 502(a) "'does not purport to reach every question relating to plans governed by ERISA.'" *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 5 (1st Cir. 1999) (quoting *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 25 (1983)).

Complete preemption is not the only kind of preemption under ERISA. Under § 514(a), the statute also preempts all state laws that "relate to" an employee benefit plan governed by ERISA. 29 U.S.C. § 1144(a). Such ordinary preemption—sometimes called conflict preemption—does not transmogrify a state-law claim into a federal claim. *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999). Rather, it simply provides an affirmative federal defense to a state-law claim. *Id*. Therefore, ordinary preemption, unlike complete preemption, does not provide a basis for removal to federal court. *See id*. ("State law claims [that] fall outside the scope of ERISA's civil enforcement provision, § 502, even if preempted by § 514(a), are still governed by the well-pleaded complaint rule, and, therefore, are not removable under . . . complete-preemption principles[.]" (first alteration in original) (internal quotation marks omitted)); *Taylor*, 481 U.S. at 64 ("ERISA pre-emption, without more, does not convert a state claim into an action arising under federal law.").

Accordingly, this court's jurisdiction depends on whether any one of plaintiffs' state-law claims is completely preempted.

IV

The Westfalls maintain that their claims are not completely preempted because they do not seek to enforce any rights granted by § 502(a) or the terms of the Millennium Plan. *See* 29 U.S.C. § 1132(a)(1)(B) (allowing ERISA-plan participant or beneficiary to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan). Rather, the Westfalls contend that the essence of their claims is that they were fraudulently induced to invest in the Millennium Plan. Defendants counter that the Westfalls' claims are not based wholly on fraudulent inducement and that they fall within the scope of § 502(a)(3), which authorizes equitable relief to redress violations or enforce provisions of ERISA or the terms of a plan. *See id*. § 1132(a)(3).

A

The court first addresses whether the Westfalls' claims fall within the scope of ERISA § 502(a)(1)(B). In *Aetna Health*, on which the Westfalls rely, the Supreme Court discussed preemption under this provision. The Court held that "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty

- 9 -

that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." *Aetna Health*, 542 U.S. at 210; *see also McGowin v. Manpower Int'l, Inc.*, 363 F.3d 556, 559 (5th Cir. 2004) ("If [plaintiff] could have brought her claim under ERISA, the cause of action is completely preempted and provides a basis for federal jurisdiction."); *Danca*, 185 F.3d at 5 ("For [a state cause of action to fall within the scope of ERISA § 502(a)], the state law must be properly characterized as an 'alternative enforcement mechanism' of ERISA § 502(a) or of the terms of an ERISA plan." (quoting *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 658 (1995))).

The court concludes that none of the Westfalls' claims can fairly be characterized as seeking to recover benefits, enforce rights, or clarify rights to future benefits under the terms of the Millennium Plan, and therefore could not have been brought under § 502(a)(1)(B). Rather, the gravamen and essence of their claims is fraudulent inducement to invest in the Millennium Plan and subsequent concealment of the misrepresentations. Defendants identify a few discrete allegations that they argue relate to conduct that occurred after the formation of the Millennium Plan, and they maintain that the claims therefore intrude into ERISA's exclusive territory. The court disagrees. Simply because conduct occurred after a plan's formation does not mean that claims based

on it could have been brought under § 502(a)(1)(B). And, as will be discussed further below, the Fifth Circuit and other courts have indicated that timing is not critical to the preemption of fraudulent inducement claims. *See*, *e.g.*, *Hobson v. Robinson*, 75 Fed. Appx. 949, 954 (5th Cir. 2003). The Westfalls' claims do not depend on, or even implicate, the Millennium Plan's terms or its status as an ERISA plan. The claims would exist with respect to any type of an investment—not just an ERISA plan—because they rest on independent statutory and common-law duties that proscribe misrepresentation in various forms. Therefore, they are not preempted under § 502(a)(1)(B).

This conclusion is reinforced by an examination of Fifth Circuit precedent regarding ERISA preemption of fraudulent inducement claims.[3] In *Perkins v. Time Insurance Company*, 898 F.2d

_____

[3]The parties formulate their discussion of Fifth Circuit case law in terms of the two-prong test for ERISA preemption followed in this circuit. The Fifth Circuit considers whether

> (1) the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan, and (2) [whether] the claims directly affect the relationship between the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries.

*Hollis v. Provident Life & Accident Ins. Co.*, 259 F.3d 410, 414 (5th Cir. 2001).
This test has been characterized as relevant to the ordinary preemption inquiry under ERISA § 514(a)'s "relate to" standard. *See*, *e.g.*, *E.I. DuPont de Nemours & Co. v. Sawyer*, 517 F.3d 785, 799-800 (5th Cir. 2008); *Hollis*, 259 F.3d at 413-14. The Fifth

470 (5th Cir. 1990), the court held that ERISA did not preempt a state-law claim for fraudulent inducement against an independent insurance agent who allegedly misrepresented an ERISA plan's scope of coverage for medical treatments. *Id.* at 473. The court reasoned that "[a] state law claim of that genre, which does not affect the relations among the principal ERISA entities (the employer, the plan fiduciaries, the plan, and the beneficiaries) as such, is not preempted by ERISA." *Id*.

Similarly, the Fifth Circuit in *Hubbard v. Blue Cross & Blue Shield Ass'n*, 42 F.3d 942 (5th Cir. 1995), held that ERISA did not preempt the plaintiff's claims for fraud and violation of the DTPA. *Id*. at 947. She alleged that the defendant insurer association promulgated deceptive advertising that had induced her to procure its health insurance. Consistent with *Perkins*, the court reasoned

---

Circuit has also considered one or both of these factors, however, in analyzing the preemption of removed fraudulent inducement claims. *See*, *e.g.*, *Hobson*, 75 Fed. Appx. at 953-56; *Perkins v. Time Ins. Co.*, 898 F.2d 470, 473 (5th Cir. 1992); *Hubbard v. Blue Cross & Blue Shield Ass'n*, 42 F.3d 942, 947 (5th Cir. 1995); *see also Gulf Coast Plastic Surgery, Inc. v. Standard Ins. Co.*, 562 F.Supp.2d 760, 766 (E.D. La. 2008) (noting that "some cases include analyses about the propriety of removal within the context of ERISA § 514(a)'s 'relates to' standard without discussing § 502(a)," and citing *Hobson* and *Perkins*). District courts within the Fifth Circuit have done so as well. *See*, *e.g.*, *Cotner v. Hartford Life & Annuity Ins. Co.*, 2008 WL 59174, at *4 (N.D. Tex. Jan. 4, 2008) (Fish, J.) (applying two-factor test to analyze complete preemption under § 502(a)); *Arnold v. Bradley*, No. 4:08-CV-170-Y, slip op. at 9 (N.D. Tex. July 25, 2008) (Means, J.) (same). Therefore, the court will consider Fifth Circuit cases discussing preemption of removed fraudulent inducement claims under the "relate to" standard and the two-prong test developed under it.

that such a claim neither implicated the ERISA plan's administration of benefits nor affected the relations among principal ERISA entities, noting that the insurer-defendant was not an ERISA entity. *Id.* By contrast, the court held that the plaintiff's other claim——that the defendant had issued "secret guidelines" regarding policy interpretation——was preempted by ERISA. *Id.* at 946. The court concluded that this claim was in essence a claim for improper denial of benefits. As such, it raised questions that were "intricately bound up with the interpretation and administration" of the plan. *Id.*

In *Hobson* the Fifth Circuit surveyed its relevant precedent and confirmed "the law in this circuit that a state law claim for fraudulent inducement is not preempted by ERISA." *Hobson*, 75 Fed. Appx. at 956 (citing *Smith v. Tex. Children's Hosp.*, 84 F.3d 152, 155-56 (5th Cir. 1996)). The *Hobson* plaintiffs, a corporation and its employee, brought state-law claims for fraud and misrepresentation, alleging that the defendants had induced the company to purchase a purported health insurance plan that was actually a self-funded ERISA plan with little or no assets. *Id.* at 951. The Fifth Circuit rejected the argument that the claims were preempted on the basis that the defendant had become an ERISA fiduciary when the plan was formed. *Id.* at 954. The panel explained that, under circuit case law, neither the defendant's fiduciary status *vel non* nor the "timing of plan formation" was a

factor crucial in determining preemption. *Id.* It also observed that a defendant may be "an ERISA fiduciary in regards to some claims but not in regards to others." *Id.* at 955 (citing *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc.*, 793 F.2d 1456, 1468 (5th Cir. 1986)). The court therefore concluded that "the important factor in ERISA preemption is the relationship between the parties involved in the claim itself and whether that claim is intricately bound with an ERISA plan." *Id.* Applying this principle, the court reasoned that the relationship between the *Hobson* plaintiffs and the defendant and the legal duties imposed on that relationship "derive[d] from state common-law claims, not the ERISA plan." *Id.* at 956. Further, the plaintiffs' fraud and misrepresentation claims did "not require either plan interpretation or administration," an area of exclusive federal concern. *Id.*

Other courts have also concluded that ERISA does not preempt fraudulent inducement and related claims. *See*, *e.g.*, *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 992 (10th Cir. 1999); *Wilson v. Zoellner*, 114 F.3d 713, 721 (8th Cir. 1997); *Morstein v. Nat'l Ins. Servs., Inc.*, 93 F.3d 715, 722-23 (11th Cir. 1996) (en banc); *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1470-72 (4th Cir. 1996); *Gulf Coast Plastic Surgery v. Standard Ins. Co.*, 562 F.Supp.2d 760, 769 (E.D. La. 2008); *Forman v. Mohamed*, 2008 WL 347678, at *3 (S.D. Tex. Feb. 7, 2008); *Ram*

*Tech. Servs. v. Koresko*, 2004 WL 1050888, at *4 (D. Ore. Apr. 15, 2004) (collecting cases); *Daniels v. Bursey*, 2003 WL 22053580, at *7 (N.D. Ill. Sept. 3, 2003); *Giannetti v. Mahoney*, 218 F.Supp.2d 8, 12 (D. Mass. 2002).

Of particular note are two recent cases decided by this court. *See Cotner v. Hartford Life & Annuity Ins. Co.*, 2008 WL 59174 (N.D. Tex. Jan. 4, 2008) (Fish, J.); *Arnold* v. *Bradley*, No. 4:08-CV-170-Y (N.D. Tex. July 25, 2008) (Means, J.). Both *Cotner* and *Arnold* involved facts similar to those here. The plaintiffs in each case alleged that the defendants induced them to invest in an ERISA plan by misrepresenting, *inter alia*, the plan's tax benefits. In *Cotner*, as in the present case, the IRS ruled that the plan would not qualify under the Internal Revenue Code provision on which the defendants relied, and it initiated an audit of the plan. *Cotner*, 2008 WL 59174, at *1. Similarly, the *Arnold* plaintiffs received notice that the IRS was investigating plans like theirs that purported to qualify under a particular Code provision, which caused them to withdraw from the plan and lose money. *Arnold*, No. 4:08-CV-170, slip op. at 4-5. In both cases, judges of this court held that the plaintiffs' claims were not completely preempted by ERISA and remanded the cases to state court. In *Cotner* Judge Fish rejected the argument that the plaintiffs' claims, which included fraud, negligent misrepresentation, civil conspiracy, and violations of the DTPA and the Texas Insurance Code, fell within

the scope of ERISA § 502(a)(2), which authorizes recovery for breach of fiduciary duty. *Cotner*, 2008 WL 59174, at *4. Judge Fish reasoned that, because the alleged misrepresentations had predated creation of the plan, they could not have violated any fiduciary duty imposed by ERISA. *Id.* (citing 29 U.S.C. § 1109(a), (b)). Similarly, in *Arnold* Judge Means held that the plaintiffs' fraud and misrepresentation claims were not completely preempted by § 502(a)(2) because the alleged misconduct had occurred during solicitation regarding the plan and the claims did not "require interpretation of the [plan] or concern its administration." *Arnold*, No. 4:08-CV-170-Y, slip op. at 10-11. Judge Means concluded that "there is nothing in ERISA reflecting Congress's intent to displace state law in matters of fraud and misrepresentation in the solicitation and promotion of an ERISA benefit plan." *Id.* at 11.

B

Defendants offer two primary reasons why the present case is distinguishable from cases such as *Hobson*, *Cotner*, and *Arnold* that hold that fraudulent inducement claims are not preempted under ERISA. First, they maintain that the courts in these cases relied on the fact that the alleged misrepresentations occurred before plan formation. Defendants maintain that the Westfalls allege not only pre-plan, but also post-plan, misconduct. They contend that such claims implicate an area of exclusive federal concern under

- 16 -

ERISA. Defendants point specifically to allegations that certain defendants concealed information from the Westfalls in order to perpetuate the initial fraud. *See*, *e.g.*, Am. Compl. § 6.03 ("Wicker, Ridge, Bevan, Innovus, Cocks, American General and the Millennium Defendants . . . prevented Plaintiffs from fully understanding the true nature of the investment in order to prevent Plaintiffs from discovering the various misrepresentations and fraud[.]"). They also highlight allegations that involve defendants Republic and SecurePlan, e.g., the allegation that these defendants did not advise the Westfalls of the Millennium Plan's tax consequences. Defendants suggest that as the plan's trustee and third-party administrator, respectively, Republic and SecurePlan did not have contact with the Westfalls until after the plan's formation.

The court is not persuaded by defendants' effort to distinguish the present suit from the above-discussed cases based on allegations that involve misconduct occurring after the formation of the Millennium Plan. *Hobson* makes clear that the "timing of plan formation is not the crucial factor in ERISA preemption." *Hobson*, 75 Fed. Appx. at 954; *see also Gulf Coast Plastic Surgery*, 562 F.Supp.2d at 770 (rejecting defendant's argument that complete preemption "should apply only to situations in which the alleged unlawful conduct occurred before the existence of any plan, regardless of the defendant's responsibilities and

powers with respect to the plan"); *Miara v. First Allmerica Fin. Life Ins. Co.*, 379 F.Supp.2d 20, 59 (D. Mass. 2005) (undertaking extensive review of appellate court decisions regarding ERISA preemption) ("This Court concludes that the existence of a relationship [based] on a plan governed by ERISA is more critical to the preemption determination than is the timing of the alleged misrepresentation." (internal quotation marks and citation omitted)). Instead, *Hobson* indicates that the focus should be on the relationship between the parties involved in the claim itself and whether that claim is intricately bound up with an ERISA plan.

Here, a reading of the Westfalls' amended complaint as a whole reveals that the gravamen of their allegations is fraudulent inducement to invest in the Millennium Plan based on misrepresentations made before its formation, and the subsequent concealment of the misrepresentations. Although the alleged fraudulent concealment occurred after plan formation, this claim is not intricately bound up with the plan. Rather, the nature of this claim relates back to the fraudulent inducement claim——a continuation of the alleged deception initially perpetrated on the Westfalls. The relationship between the Westfalls and the defendants that is implicated by the fraudulent inducement claim does not derive from ERISA or the terms of the Millennium Plan. Rather, it derives from state common law and statutes proscribing various forms of misrepresentation. Therefore, the court declines

to hold the Westfalls' claims preempted on the ground that they involve some post-plan misconduct.

Second, defendants contend that this case is distinguishable from those holding fraudulent inducement claims not to be preempted because the amended complaint asserts claims against putative Millennium Plan fiduciaries, including Republic as the trustee, SecurePlan as the third-party administrator, and Cocks as the Chairman of the Millennium Plan Committee.  Defendants maintain that the claims therefore directly affect the relationship among traditional ERISA entities.  The court disagrees.

Under ERISA, a fiduciary is defined as follows:

> [A] person is a fiduciary with respect to a plan *to the extent* (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A) (emphasis added).  This is a functional rather than a categorical definition.  In other words, a person may be a fiduciary in relation to certain claims but not to other claims.  *Bank of La. v. Aetna U.S. Healthcare, Inc.*, 468 F.3d 237, 243 (5th Cir. 2006) (citing *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000)); *accord Hobson*, 75 Fed. Appx. at 955.  "For purposes of

ERISA preemption the critical distinction is not whether the parties to a claim are traditional ERISA entities in some capacity, but instead whether the relevant state law affects an aspect of the relationship that is comprehensively regulated by ERISA." *Bank of La.*, 468 F.3d at 243. Therefore, "ERISA may preempt some claims between traditional ERISA entities but not others." *Id*. The fluidity of this definition requires courts to "examine the conduct at issue when determining whether an individual is an ERISA fiduciary." *Hamilton v. Carell*, 243 F.3d 992, 998 (6th Cir. 2001); *see also Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1287 (11th Cir. 2005) ("Thus, [defendant] was not acting 'in its role as an ERISA entity' at the time the plaintiffs allege that it fraudulently induced them to buy the vanishing premium life insurance policies at issue here."). In short, a person is a fiduciary "only as to the activities [that] bring the person within the definition," which focuses on the management and administration of the ERISA plan and its assets. *Coleman v. Nationwide Life. Ins. Co.*, 969 F.2d 54, 61 (4th Cir. 1992).

The Westfalls' fraudulent inducement allegations——involving the misrepresentations made before the Millennium Plan's formation——cannot be brought against the defendants in their putative fiduciary capacities because they could not have been plan fiduciaries before the plan existed. *See Woodworker's Supply*, 170 F.3d at 991 ("Congress quite logically defined a plan fiduciary in

relation to a plan. If no plan exists, by definition plan fiduciaries cannot exist."). Nor can the fraudulent concealment claim be brought against the defendants as fiduciaries. Defendants were not acting as fiduciaries when they allegedly cooperated in concealing the initial misrepresentations. Such activity did not pertain to the management or administration of the Millennium Plan or its assets. Rather, defendants were allegedly acting to perpetuate the initial fraud, which was not undertaken in a fiduciary capacity.

On this point, the court finds instructive the Eleventh Circuit's analysis in *Cotton*. The *Cotton* plaintiffs alleged that the defendant insurance company induced them to purchase its policies through fraud and misrepresentation. *Cotton*, 402 F.3d at 1273. The alleged misrepresentations "were made both before and after the plan was established." *Id*. at 1287. The question presented was whether the insurer was an ERISA fiduciary in relation to the plaintiffs' claims. *Id*. at 1277. The court found to be relevant the fact that the "misconduct [was] alleged to have begun at a time when the defendant could not possibly have been acting as an ERISA fiduciary." *Id*. at 1287. This suggested that the suit was not "against the insurer-qua-fiduciary." *Id*.

Similarly, here, the fact that the alleged misrepresentations were made before any defendant had fiduciary status, and were allegedly later concealed, suggests that this suit is not brought

against the defendants in their fiduciary capacities under ERISA.[4]
Therefore, it does not make sense to immunize them from the
Westfalls' state-law fraud and related claims. *Cf. Cotton*, 402
F.3d at 1284 ("And when an insurer is not acting in its capacity as
an ERISA entity, we can see no reason that Congress would have
sought to immunize it from liability for fraud or similar state-law
torts."). This would not serve Congress' goal of protecting
employees' interests in their benefit plans. If ERISA preempts
state-law fraudulent inducement claims, then

> employees, beneficiaries, and employers
> choosing among various plans will no longer be
> able to rely on the representations of the
> insurance agent regarding the terms of the
> plan. These employees, whom Congress sought
> to protect, will find themselves unable to
> make informed choices regarding available
> benefit plans where state law places the duty
> on agents to deal honestly with applicants.

*Morstein,* 93 F.3d at 723-24.

---

[4]Defendants point to another allegation of the amended
complaint to support their argument that the Westfalls' claims are
brought against traditional ERISA entities and thus preempted: that
Republic and SecurePlan involuntarily terminated the Westfalls'
interest in the plan at the expense of the Westfalls' best
interest. *See* Am. Compl. ¶ 5.08. This allegation appears in the
"Background Facts" section of the amended complaint. It is neither
explicitly incorporated nor implicitly necessary to any of their
causes of action. Therefore, although the alleged termination
potentially may have been undertaken in a fiduciary capacity, the
court is unwilling to deprive the Westfalls of their choice of
forum based on this isolated allegation. The gravamen and essence
of the Westfalls' claim is that they were fraudulently induced into
an investment that they would not have made had they been given
truthful information.

The court next considers whether the Westfalls' claims are preempted by ERISA § 502(a)(3). Defendants maintain that the Westfalls' demand for rescission and imposition of a constructive trust brings their claims into the exclusive territory of this provision. They further contend that imposition of a constructive trust will depend on the interpretation and administration of the Millennium Plan.

Section 502(a)(3) has been referred to as ERISA's "catch-all" provision because it permits equitable relief for violations of ERISA not provided for by any of the other civil enforcement provisions. *Cotner*, 2008 WL 59174, at *5 (citing *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996)). This provision permits a plan participant or beneficiary to bring a civil action for an injunction or "other appropriate equitable relief" to redress violations of ERISA or the terms of a plan or to enforce the provisions of ERISA or the terms of a plan. 29 U.S.C. § 1132(a)(3). Defendants correctly point out that courts have held that, in certain circumstances, § 502(a)(3) permits rescission or the imposition of a constructive trust. *See*, *e.g.*, *Sereboff v. MidAtl. Med. Servs., Inc.*, 547 U.S. 356, 363 (2006) (constructive trust); *Griggs v. E.I. DuPont de Nemours & Co.*, 385 F.3d 440, 446 n.3 (4th Cir. 2004) (rescission). As the language of § 502(a)(3) makes clear, however, these remedies are available only when the

plaintiff seeks to enforce the provisions of ERISA or the terms of a plan or to redress violations of either. *See Arnold*, No. 4:08-CV-170-Y, slip op. at 11 ("[§ 502(a)(3)], however, is limited to redressing violations of ERISA or the terms of a plan."). This is not what the Westfalls seek to do. As explained above, their claims are not brought under ERISA or the Millennium Plan, and the claims would exist even if the Millennium Plan were not an ERISA plan. Therefore, their claims do not fall within the scope of § 502(a)(3). *See Cotner*, 2008 WL 59174, at *5 (rejecting argument that plaintiff's state-law fraud and related claims fell within scope of § 502(a)(3) because rescission sought); *Arnold*, No. 4:08-CV-170-Y, slip op. at 11 (same).

Nor are the Westfalls' claims preempted on the basis that imposition of a constructive trust would depend on the interpretation and administration of the Millennium Plan. At most, a state court imposing a constructive trust may potentially find it necessary to refer to the terms of the plan in order to trace the money arising from the Westfalls' payments into it. This does not render their demand for a constructive trust dependent on the interpretation of the plan such that it should be preempted. *Cf*. *Rozzell v. Sec. Servs., Inc.*, 38 F.3d 819, 822 (5th Cir. 1994) (rejecting argument that "any lawsuit in which reference to a benefit plan is necessary to compute plaintiff's damages is preempted by ERISA and is removable to federal court"); *accord E.I.*

*DuPont de Nemours & Co.*, 517 F.3d at 800 n.11.

*     *     *

Accordingly, the court holds that defendants have failed to satisfy their burden of establishing federal jurisdiction. The court grants plaintiffs' July 14, 2008 motion to remand because the court lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c). This action is remanded to the 95th Judicial District Court of Dallas County, Texas. The clerk shall effect the remand in accordance with the usual procedure.

**SO ORDERED.**

January 15, 2009.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE